**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

WILHEMINA L.,                          :
                                       :
 Plaintiff,                            :
                                       :
v.                                     : Civil No. 3:20-CV-1516-RAR
                                       :
KILOLO KIJAKAZI,                       :
ACTING COMMISSIONER OF                 :
SOCIAL SECURITY,                       :
                                       :
 Defendant.                            :

## RULING ON PENDING MOTIONS

Wilhemina L. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated April 12, 2020.  Plaintiff timely appealed that decision.

Currently pending before the Court are plaintiff's motion to reverse or remand her case (dkt. No. 24) and defendant's motion to affirm the Commissioner's decision (Dkt. No. 27).

For the reasons that follow, the plaintiff's motion to remand or reverse is DENIED and the Commissioner's motion to affirm is GRANTED.

## PROCEDURAL HISTORY

On November 16, 2017, plaintiff filed an application for disability insurance benefits for a period beginning September 9, 1981. (R. 11, 72.)  Plaintiff alleged that she suffered from a spinal cord injury and fibromyalgia. (R. 11.)  Upon initial consideration the plaintiff was found not to be disabled on February 6, 2018.  (R. 77.) Plaintiff sought reconsideration and was denied benefits upon reconsideration on June 21, 2018. (R. 85.)  Following the denial at reconsideration, plaintiff sought a hearing before an Administrative Law Judge ("ALJ"). (R. 106-08.)  Following the request, plaintiff was granted an administrative hearing before ALJ John Aletta, which was held on June 3, 2019. (R. 26.)  The ALJ issued an unfavorable decision on August 7, 2019. (R. 11-18.) On August 4, 2020, the Appeals Council denied plaintiff's request for review. (R. 1-3.) Thereafter, plaintiff timely filed this action seeking judicial review. (Dkt. #1.)

Due to the impacts of the COVID-19 Pandemic, the defendant filed a motion to stay these proceedings until they were able to file the full administrative record in this case.  (Dkt. #14.) On March 4, 2021, the defendant filed the administrative record and thereafter the Court issued a scheduling order indicating that plaintiff's dispositive motion would be due on May 23, 2021.  (*See* Dkt. #17 and #18.)  Plaintiff failed to file a

dispositive motion by the deadline and the Court issued an order
to show cause, indicating that by March 16, 2022, plaintiff must
show cause why this matter should not be dismissed for failure
to file her dispositive motion by the deadline that the Court
imposed.  (Dkt. 19.)

Plaintiff informed the Court that she had been unaware of
the record being filed in this case and did not know that a
deadline had been set for her dispositive motion. (Dkt. 20.) In
light of these representations, and considering the plaintiff's
*pro se* status, the Court issued an extension of time and allowed
the plaintiff to file her dispositive motion by June 27, 2022.
(Dkt. #21.)  Plaintiff responded by filing a two-page motion
that lacked any new factual information or any alleged legal
error by the ALJ.  (Dkt. #22.)  Rather, the document simply
asserted that plaintiff was declared disabled as of January 15,
1983 and thus should have received Disability Insurance Benefits
one year from that date. (Dkt. #22 at 2.)

Following this filing, on June 14, 2022, and in striving to
have this matter decided on the merits, the Court issued an
order stating that plaintiff's motion caused some confusion.  It
was possible to construe plaintiff's motion as a request to file
a dispositive motion, or in the alternative as the motion
itself. (Dkt. #23.) Once again, in light of the plaintiff's *pro
se* status, the Court allowed plaintiff to refile her motion by

the deadline of June 27, 2022.  Further, the Court explained
that "Plaintiff's memorandum of law must discuss the reasons why
the court should set aside the Commissioner's determination that
she is not disabled. Plaintiff must show that the Administrative
Law Judge's factual findings were not supported by substantial
evidence or that the decision was based on legal error." (Dkt.
#23.)  Thereafter on June 27, 2022, plaintiff filed her motion
to reverse the decision of the Commissioner.  Defendant has
since filed motion to affirm the decision of the Commissioner
and the plaintiff has recently filed a response. (Dkt. # 27 and
#28.)

## STANDARD

"A district court reviewing a final . . . decision [of the
Commissioner of Social Security] pursuant to section 205(g) of
the Social Security Act, 42 U.S.C § 405(g), is performing an
appellate function."  Zambrana v. Califano, 651 F.2d 842, 844
(2d Cir. 1981).  "The findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,
[are] conclusive . . . ."  42 U.S.C. § 405(g).  Accordingly, the
court may not make a *de novo* determination of whether a
plaintiff is disabled in reviewing a denial of disability
benefits.  Id.; Wagner v. Sec'y of Health and Human Servs., 906
F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is
to ascertain whether the Commissioner applied the correct legal

principles in reaching her conclusion, and whether the decision
is supported by substantial evidence.  <u>Johnson v. Bowen</u>, 817
F.2d 983, 985 (2d Cir. 1987).

The Social Security Act ("SSA") provides that benefits are
payable to an individual who has a disability.  42 U.S.C.
§ 423(a)(1).  "The term 'disability' means . . . [an] inability
to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment. . . ."  42
U.S.C. § 423(d)(1).  To determine whether a claimant is disabled
within the meaning of the SSA, the ALJ must follow a five-step
evaluation process as promulgated by the Commissioner.[1]

To be considered disabled, an individual's impairment must
be "of such severity that he is not only unable to do his
previous work but cannot . . . engage in any other kind of

---

[1] The five steps are as follows: (1) the Commissioner considers whether
the claimant is currently engaged in substantial gainful activity; (2)
if not, the Commissioner considers whether the claimant has a "severe
impairment" which limits his or her mental or physical ability to do
basic work activities; (3) if the claimant has a "severe impairment,"
the Commissioner must ask whether, based solely on the medical
evidence, the claimant has an impairment listed in Appendix 1 of the
regulations. If the claimant has one of these enumerated impairments,
the Commissioner will automatically consider him or her disabled,
without considering vocational factors such as age, education, and
work experience; (4) if the impairment is not "listed" in the
regulations, the Commissioner then asks whether, despite the
claimant's severe impairment, he or she has the residual functional
capacity to perform his or her past work; and (5) if the claimant is
unable to perform his or her past work, the Commissioner then
determines whether there is other work which the claimant could
perform.  The Commissioner bears the burden of proof on this last
step, while the claimant has the burden on the first four steps.  20
C.F.R. § 416.920(a)(4)(i)-(v).

substantial gainful work which exists in the national economy."
42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national
economy means work which exists in significant numbers either in
the region where such individual lives or in several regions of
the country."  Id.[2]

## I.  Discussion

As discussed previously, Plaintiff was provided with a
number of extensions and explanations related to her motion to
reverse.  As filed, plaintiff indicated in her motion that
"[t]he Commissioner's determination is based on abstract
evidence.  The Commission has not showed [sic] any substantial
evidence that I am not disable [sic]."  (Dkt. #24 at 1.)
Plaintiff then indicates that she has shown substantial evidence
of disability and then states "The Code of Regulations 111.00
Neurological disorders 101.01 Category of impairments
Musculoskeletal." (Dkt. #24 at 1.)

The Court notes that the contents of plaintiff's motion are
a single handwritten page.  The motion does not contain any
allegations of legal error on the part of the ALJ.  In light of
the contents of the motion that was filed, and in the absence of

---

[2] The determination of whether such work exists in the national economy
is made without regard to: 1) "whether such work exists in the
immediate area in which [the claimant] lives;" 2) "whether a specific
job vacancy exists for [the claimant];" or 3) "whether [the claimant]
would be hired if he applied for work."  Id.

any allegations of legal error, the Court is left only to determine if the ALJ's decision is supported by substantial evidence. *See* <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982)(stating that a Court will "only set aside a determination which is based upon legal error or not supported by substantial evidence.").

In evaluating plaintiff's application for disability benefits the ALJ applied the above articulated five-step evaluation process.  Prior to that process, the ALJ first had to determine if the plaintiff met the insured status requirements of the Social Security Act.  In this case the ALJ found that "[t]he claimant's earning record shows that the claimant has acquired sufficient quarters of coverage to remain insured through March 31, 1984 (hereinafter "the date last insured".)" (R. 12.)  Therefore, this matter concerns a discrete period of time from the alleged onset date to the date last insured, September 9, 1981 through March 31, 1984.

At step one of the sequential evaluation process the ALJ determined that plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of September 9, 1981 through her date last insured of March 31, 1984." (R. 13.)  The ALJ then moved on to step two of the process and determined that the plaintiff had the medically

determinable impairments of "chronic back strains of the cervical, dorsal, and lumbar spine."[3] (R. 13.)

Once a plaintiff establishes a medically determinable impairment the ALJ "must then evaluate the intensity and persistence of [the plaintiff's] symptoms so that [the ALJ] can determine how [the plaintiff's] symptoms limit [their] capacity for work."  20 C.F.R. 404.1529(C)(1).  The ALJ will consider medical and nonmedical evidence.  Id. at 404.1529(c)(2), (3).

"Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) [t]he location, duration, frequency, and intensity of your pain or other symptoms; . . . ."  Id. at 404.1529(c)(3).  An ALJ may properly determine that a plaintiff's complaints are inconsistent with the record where medical evidence does not sufficiently demonstrate disability and the plaintiff's daily activities demonstrate an ability to perform work.  Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009).

In Poupore, the plaintiff complained of pain even though the objective medical evidence did not support such assertions. Id.  The plaintiff stated that he cared for his one-year old child, sometimes vacuumed, washed dishes, occasionally drove,

---

[3] The ALJ additionally noted a diagnosis of Fibromyalgia in 1997 and a finding of moderate degenerative arthritis in 2007.  Since neither diagnosis waw present during the relevant period neither was medically determined for purposes of the ALJ's review.  (R. 14.)

watched television, read, and used the computer.  Id.  The
Second Circuit determined that substantial evidence supported
the ALJ's determination that the plaintiff could perform light
work.  Id.

Here, the ALJ determined, based upon a review of the
evidence that the plaintiff "did not have an impairment or
combination of impairments that significantly limited the
ability to perform basic work-related activities for 12
consecutive months; therefore, the claimant did not have a
severe impairment or combination of impairments." (R. 14.)  "If
the claimant does not have a severe impairment or combination
of impairments, the disability claim is denied." Bowen v.
Yuckert, 482 U.S. 137, 141 (1987). "The evaluation proceeds to
the third step, which determines whether the impairment is
equivalent to one of a number of listed impairments" only if the
ALJ determines that the plaintiff had a severe impairment. Id.

Therefore, in the case before the Court, the ALJ did not
move on to the remaining steps of the sequential evaluation
process and determined that the plaintiff was not disabled at
step two during the remote period under evaluation.

As previously stated, the plaintiff has not raised issues
of legal error in her motion.  Instead, the Court construes the
argument raised by plaintiff to be that there was not
substantial evidence to support the ALJ's determination at step

two of the evaluation process.[4]  Thus, the evaluation of this
Court will be centered around whether the ALJ's determination
regarding plaintiff's lack of a severe impairment is supported
by substantial evidence.  Therefore, if the Commissioner's
decision is supported by substantial evidence, that decision
will be sustained, even where there may also be substantial
evidence to support the plaintiff's contrary position.  Schauer
v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

      "A claimant has the burden of establishing that she has a
'severe impairment,' which is 'any impairment or combination of
impairments which significantly limits [her] physical or mental
ability to do basic work.'"  Woodmancy v. Colvin, 577 Fed. Appx.
72, 74 (2d Cir. 2014)(quoting 20 C.F.R. § 416.920(c))
(alterations in original).  A mere diagnosis of a disease or

---

[4] The Court notes that plaintiff's motion referred to two listings of
impairments found in Appendix 1 of the Social Security regulations.
The Court construes this reference to be an argument that the ALJ
erred by not including an analysis that the plaintiff's medical
conditions met or exceeded the listings mentioned.  However, where an
ALJ does not find a severe impairment or combination of impartments at
step two, the ALJ will not reach step three and the evaluation of any
listed impairment.  Only "if the claimant has a 'severe impairment,'
the Commissioner must ask whether, based solely on the medical
evidence, the claimant has an impairment which 'meets or equals'
an impairment listed in Appendix 1 of the regulations (the Listings)."
Testa v. Saul, No. 3:19-CV-00152(WIG), 2019 WL 5208789, at *1 (D.
Conn. Oct. 16, 2019)(quoting McIntyre v. Colvin, 758 F.3d 146, 149 (2d
Cir. 2014)).  Therefore, the Court could not find any error in the
ALJ's failure to consider the listings, unless and until it was
determined that the step two determination lacked substantial
evidence.

impairment is insufficient, the evidence must demonstrate that such impairment is severe.  See Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d Cir. 2008).

A severe impairment is "any impairment or combination of impairments which significantly limits [a plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. 416.920(c).  A severe impairment must meet the durational requirement, such that the impairment be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. 416.909.

Additionally, the Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

In reaching his conclusion at step two, the ALJ evaluated all of the plaintiff's symptoms and the medical evidence in the record. (R. 14.)  In so doing, the ALJ first considered the evidence in the record, and found "that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms." (R. 14.) The ALJ concluded,

however, that the plaintiff's allegations related to the
"intensity, persistence and limiting effects of these symptoms
are not entirely consistent with the medical evidence. . . ."
(R. 14.)

A review of the record shows that the ALJ analyzed both the
medical evidence in the record, as well as plaintiff's
testimony.

1. Evaluation of the Medical Evidence

The ALJ identifies that the alleged back condition was
noted in records from January 1982, the records indicate that
the accident occurred at plaintiff's workplace in September
1981. (R. 281.)  The ALJ notes that the record shows plaintiff
received emergency medical treatment, including an X-ray which
"showed no fracture and the claimant was diagnosed with a
sprain, her providers recommending lower back rest and heat for
treatment." (R. 15)(citing R. 281.)  The ALJ also identified
that the treatment notes from a number of providers, spanning
January 1981 through October 1986, indicate that plaintiff was
instructed to take pain medication, attend physical therapy, and
in some cases return to work. (R. 15-16, 281-92.)  Some of the
records further indicate, as the ALJ cited, that plaintiff
reported feeling much better, had been completing housework, and
appears to have returned to work. (R. 15 and 286.)  The ALJ does
highlight that there were "ongoing complaints of lower back pain

and tenderness was noted on one other occasion," the notes also show routine reports of improvement.  (R. 15, 286-289.)  The ALJ also notes a specific treatment record from May 1983 wherein it states that there is "no evidence of an orthopedic problem on today's exam." (R. 16, 288.)

In addition, the ALJ notes that there are ongoing records following the plaintiff's date last insured.  In April 1994, records indicate ongoing complaints, a diagnosis of mild scoliosis, and no other abnormal findings. (R. 16, 276-77.)  As a result of this the plaintiff was prescribed physical therapy, which the ALJ notes plaintiff did not attend.  (R.16, 242-43.) The ALJ asserts that plaintiff's failure to attend the physical therapy is an indication that "her symptoms were not particularly limiting at that time." (R. 16.)

2. Plaintiff's Testimony

During her testimony before the ALJ, plaintiff stated that she was unable to work from 1981-1984 as result of her September 1981 workplace accident. (R. 35.)  The ALJ highlighted that plaintiff alleged a spinal fracture due to the accident and that she "experienced radiating pain into her cervical and lumbar spine from th[e] accident that also affected her legs as well." (R. 15 and 36.)  According to plaintiff's testimony, and the ALJ's recitation, plaintiff also claimed to have lifting and carrying problems at this time. (R. 15 and 37.)

13

In contrast to these allegations, the ALJ pointed out that, when asked, the plaintiff also discussed her activities of daily living.  (R. 15 and 16.)  In her testimony plaintiff identified that, while her alleged pain and injury made some of her patterns change, she still cared for her two toddlers, did laundry, went grocery shopping, occasionally attended church, and performed necessary chores.  (R. 15-16 and 38-43.)

    3. Opinion Evidence

       i.   State Agency Consultants

The ALJ found that the State Agency consultants' conclusions regarding plaintiff's condition were persuasive, in part.  Dr. Lisa Anderson provided an initial determination that plaintiff was not disabled in February 2018.  (R. 78.) Dr. Anderson determined that based on the evidence presented there was insufficient evidence to find a medically determinable impairment present at the date last insured, and further that the evidence cannot be obtained.  (R. 78.) Dr. Arvind Chopra determined the same on reconsideration in June 2018. (R. 86)

The ALJ notes that the findings of the consultants are

> "mostly consistent with and supported by the medical evidence as a whole, which showed that, despite her complaints of ongoing pain . . . the record showed that the claimant's symptoms improved quickly with treatment, that her complaints were often vague and non-specific, that examinations often showed no evidence of an orthopedic problem, . . . and that she could care for two young children, grocery shop, prepare meals, clean, and attend church despite her complaints."

(R. 16.)  The ALJ further articulated that State Agency
Consultants, by nature of their positions, possess
"particularized knowledge of the disability program."  (R. 17.)
In light of this particularized knowledge, the ALJ noted that
the consultants are capable of making judgments regarding
symptoms and alleged disabling limitations.  For these reasons,
the ALJ found their opinions partially persuasive.

     ii.  Dr. Roy Kellerman

In addition to the consultants, the record contains and the
ALJ reviewed, a medical opinion provided by Dr. Roy Kellerman.
The letter from Dr. Kellerman is dated January 8, 2002 and
contains two sentences. (R. 245.) Dr. Kellerman states that
plaintiff "is under [his] medical care and is disabled because
of Fibromyalgia.  She requires a live-in aide to assist with her
activities of daily living." (R. 245.)

The ALJ found this opinion letter from Dr. Kellerman to be
unpersuasive.  The Court agrees.  The letter offers no
information regarding plaintiff's condition during the relevant
time period in this case.  Further, there is no reference to any
of plaintiff's back conditions which are the bulk of her alleged
need for benefits.  The ALJ also identifies that this letter
does not point to any medical evidence or findings to support
its assertion that the plaintiff is disabled.  Finally, the ALJ

noted that the letter is nearly 20 years after the date last insured and as such is of little value in assessing the plaintiff's condition during the time in question. "[A] medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period." Kudrick v. Comm'r of Soc. Sec., No. 1:19CV01343(WBC), 2020 WL 2933234, at *8 (W.D.N.Y. June 3, 2020) (collecting cases).

While the Court is aware that "the ALJ may not discount an opinion solely because it was rendered after the plaintiff's date last insured." Cheryl L. D. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00704(SALM), 2022 WL 2980821, at *13 (citing Kudrick, 2020 WL 2933234, at *8).  In this case, the ALJ has provided sufficient reasons for the decisions to find that the opinion of Dr. Kellerman was unpersuasive.

### iii. Dr. Norman Markey

The record in this case also contains notes and records from Dr. Norman Markey.  Dr. Markey included a letter dated January 29, 1982[5] in his records, which concluded with the statement that "[i]t is necessary for the patient to be out of

---

[5] The Court notes that the ALJ misstated the date of the letter from Dr. Markey as September 9, 1981, which is the date of the accident in this case.  In any event, the ALJ provided a citation to the latter and a review of the letter and the ALJ's analysis does confirm that the letter he referenced, found at exhibit 1F of the record, is dated January 29, 1982.

work now and for an indefinite period which will depend on her treatment and her response to it." (R. 240.)  In the main body of the letter Dr. Markey identified the accident at issue and outlined the condition that he found plaintiff to be in.  Dr. Markey indicated a belief that the plaintiff would improve "with active manual mobilization and physiotherapy to the injured areas." (R. 240.)  The ALJ found this letter from Dr. Markey to be vague, lacking a longitudinal value, and concerning "a conclusion involving a matter reserved for the Commissioner . . . concerning the ability to work."  (R. 240.) When providing a medical opinion, the Commissioner is seeking "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513. Here the letter indicates some results and findings from an examination of the plaintiff, however, there does not appear to be an attempt to articulate what plaintiff can or cannot do in light of her alleged impairments.  The Court agrees with the ALJ's analysis of this letter.

As previously articulated, given the status of this case, the question before the Court is whether the ALJ's decision that there was no severe impairment at step two of the sequential evaluation process is supported by substantial evidence.  Upon a review of the evidence of record, the ALJ's opinion, and the

plaintiff's testimony, the Court is satisfied that the ALJ has cleared the bar of substantial evidence.  In so finding, the Court is not expressing any opinion on the plaintiff's condition, at the time in question or today.  Rather, the Court is only determining that taking the evidence as a whole, there is "more than a scintilla or touch of proof here and there in the record" to support the ALJ's decision.  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

## CONCLUSION

The undersigned has reviewed the decision of the Commissioner and determined that the ALJ's decision is supported by substantial evidence.  In light of this determination, plaintiff's motion to remand is DENIED and the Commissioner's motion to affirm is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 20th day of September, 2022 at Hartford, Connecticut.

                              /s/
                         _____
                              Robert A. Richardson
                              United States Magistrate Judge